**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**
Civil Action No. 4:26-cv-00437

PAIGE SMITH,
an individual,

       Plaintiff,

v.

THE TAVERNA COLLECTION, INC,
a Florida Corporation
and DRIVE TAVERNA COLLECTION, LLC
d/b/a TAVERNA INFINITI NORTH MIAMI
a non-existent entity,

       Defendants.

_____/


**<u>DEFENDANT THE TAVERNA COLLECTION INC.'S OPPOSED OMNIBUS MOTION TO TRANSFER VENUE, OR, IN THE ALTERNATIVE, TO DISMISS OR TRANSFER FOR IMPROPER VENUE, AND TO DISMISS CLAIMS AGAINST "DRIVE TAVERNA COLLECTION, LLC D/B/A TAVERNA INFINITI NORTH MIAMI"</u>**

**PRELIMINARY STATEMENT**

This action should be transferred to the Southern District of Florida, Miami Division, pursuant to 28 U.S.C. § 1404(a). The events giving rise to Plaintiff Paige Smith's *pro se* Fair Credit Reporting Act claim arise from alleged conduct at an automobile dealership operating as "Taverna INFINITI North Miami" in North Miami, Florida (the "dealership"). The relevant dealership personnel are located in South Florida. The dealership's records, systems, and custodians are located in South Florida. The non-party Capital One representative with knowledge of how the transaction originated and how the associated applications were processed is also located in South Florida and is beyond this Court's subpoena power. By contrast, the only apparent connection to the Southern District of Texas is Plaintiff's residence.

Transfer is therefore warranted because the Southern District of Florida is plainly the more convenient forum. It is where the operative events allegedly occurred, where the relevant witnesses are located, where the pertinent records are maintained, and where any trial can proceed with materially less burden on witnesses and non-parties alike.

In the alternative, and without waiver of the request for transfer under § 1404(a), Defendant The Taverna Collection Inc. moves to dismiss or transfer this action for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a). Plaintiff's FCRA claim arises from conduct allegedly undertaken in Florida, not Texas, and no defendant resides in this district. If the Court concludes venue is improper, transfer or dismissal is required under § 1406(a).

Separately, and regardless of venue, the claims against "*Drive Taverna Collection, LLC d/b/a Taverna INFINITI North Miami*" should be dismissed under Rules 12(b)(6) and 12(b)(5). Public records establish that no such entity exists as a Florida limited liability company or as any other legally cognizable business entity. Because a non-existent entity lacks the capacity to be

sued, and because process directed to a non-existent entity is void, "Drive Taverna Collection, LLC" cannot remain in this action.

For the sake of avoidance of doubt, Counsel clarifies that GianMarco Taverna is appearing specially and limitedly to contest venue and the legal existence of the *'Drive Taverna'* entity. As of the date of this filing, Mr. Taverna has not been served in accordance with Rule 4(e). Nothing in this motion should be construed as a waiver of any defenses.

## BACKGROUND

### i. The Parties

Plaintiff Paige Smith resides in Manvel, Texas. (Compl. ¶ 3.) She brings this action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, alleging in broad strokes that Defendants submitted her personal consumer information to third-party lenders without a permissible purpose after she withdrew from a potential vehicle purchase. (Compl. ¶¶ 7–16.)

Defendant The Taverna Collection Inc. is a Florida corporation. (Compl. ¶ 5.) The fictitious name "Taverna INFINITI North Miami" is registered with the Florida Division of Corporations, Registration Number G25000026959, filed February 23, 2025. (Ex. A, Sunbiz Fictitious Name Filing.)[1] The registered owner is GianMarco Taverna, a Florida individual, with a business address of 3801 S. State Road 7, West Park, Florida 33023 (Broward County). (*Id.*) Taverna INFINITI North Miami operates from North Miami, Florida (Miami-Dade County); both West Park and North Miami are within the Southern District of Florida.

Plaintiff's Complaint also names "Drive Taverna Collection, LLC" as a defendant, alleging it to be a Florida limited liability company operating under the fictitious name "Taverna INFINITI North Miami." (Compl. ¶ 4.) That allegation is factually incorrect. A search of the Florida Division

---

[1] Should the Court elect to do so, it may query the portal through the following link: https://dos.fl.gov/sunbiz/search/

of Corporations database confirms that no entity named "Drive Taverna Collection, LLC" exists or has ever been registered as a Florida limited liability company or any other form of legal entity. (Ex. B, Sunbiz Entity Search). Neither The Taverna Collection Inc. nor GianMarco Taverna, maintain offices, employees, registered agents, or business operations in the State of Texas. Taverna Decl. ¶ 5.

### ii.  The Transaction and the Florida Situs of All Relevant Evidence

Plaintiff came to the dealership as a Capital One lead, referred through a referral program administered by Capital One. Taverna Decl. ¶ 8. The transaction therefore originated with a lender, not through any independent solicitation by the dealership. Capital One's dealership representative, Audreyona Washington, based in Fort Lauderdale, Florida, has personal knowledge of how the referral originated and how Capital One processes and applies inquiries in connection with applications submitted through that program. Taverna Decl. ¶¶ 9–10. The dealership's dealer management system, deal jackets, lender portal records, consumer authorization documents, and all of the dealership's Capital One referral and application records are all maintained by Florida-based custodians. Taverna Decl. ¶7; Hogan Decl. ¶¶5-6.

### iii.  Procedural History

Plaintiff filed this action on January 20, 2026. (Dkt. 1.) Purported service was made on The Taverna Collection Inc. on January 21, 2026, and on "Drive Taverna Collection, LLC" on January 23, 2026. (Dkt. 5.) On February 17, 2026, Plaintiff filed Requests for Entry of Clerk's Default and a Motion for Default Judgment against both named defendants. (Dkts. 7–8.) In addition, Plaintiff filed a Motion for Default Judgment against Drive Taverna Collection, LLC and The Taverna Collection Inc. (Dkt 6) as well as a Memorandum in Support (Dkt. 9). As of the date of this filing, a default was not entered. Defendants filed an Opposed Motion for Extension of Time to Respond

on March 3, 2026, which remains pending before this Court. (Dkt. 12.) That motion established grounds for excusable neglect, documented that the Complaint was not provided to the corporate decision-maker alongside the summons, and noted that "*Drive Taverna Collection, LLC*," the entity Plaintiff purportedly served on January 23, 2026, does not exist as a matter of law. (Dkt. 12).

This omnibus motion is submitted pursuant to the extension requested in that pending motion and is without waiver of any defenses available to GianMarco Taverna who has heretofore not been served with process.

## LEGAL STANDARD

### i. Transfer of Venue Under 28 U.S.C. § 1404(a)

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice," a district court may transfer a civil action to any district where it might have been brought. The analysis proceeds in two steps. The Court first determines whether the proposed transferee district is one in which the action could have been brought. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If so, the Court then considers the private- and public-interest factors to determine whether the transferee forum is clearly more convenient. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). A plaintiff's choice of forum is not an independent factor in that analysis. *Id.* at 314–15.

### ii. Dismissal or Transfer for Improper Venue -  Rule 12(B)(3) and 28 U.S.C. § 1406(a)

Rule 12(b)(3) authorizes dismissal for improper venue. Venue in a civil action is governed by 28 U.S.C. § 1391. If venue is improper, 28 U.S.C. § 1406(a) directs the court to dismiss the action or, if it is in the interest of justice, transfer it to a district in which it could have been brought. *See Dubin v. United States*, 380 F.2d 813, 815 (5th Cir. 1967); *Herman v. Cataphora, Inc*., 730 F.3d 460, 466 (5th Cir. 2013).

### iii. Dismissal Under Rules 12(b)(6) and 12(b)(5)

Rule 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted. Where the defect concerns whether the named defendant is a legally cognizable entity with capacity to be sued, and that defect appears on the face of the pleadings or from matters properly considered with the motion, dismissal may be appropriate under Rule 12(b)(6). See *Doe v. McKesson*, 945 F.3d 818, 824 n.2 (5th Cir. 2019), rev'd on other grounds, 592 U.S. 1 (2020); *Sneed v. Gibbs*, No. 4:23-CV-00871, 2024 U.S. Dist. LEXIS 146544, at *8 (E.D. Tex. Aug. 16, 2024).

Rule 12(b)(5) permits dismissal for insufficient service of process. When service is not made in the manner required by Rule 4, dismissal is warranted.

### iv. Judicial Notice of Records from Florida's Division of Corporations is Appropriate

The Court may consider the complaint, documents incorporated into the complaint by reference, matters of public record, and government records subject to judicial notice, without converting the motion into one for summary judgment. *Norris v. Hearst Tr*., 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Fowler v. U.S. Bank, Nat'l Ass'n*, 2 F. Supp. 3d 965, 971 (S.D. Tex. 2014); Fed. R. Evid. 201(b)(2).

### <u>ARGUMENT</u>

## A. TRANSFER TO THE SOUTHERN DISTRICT OF FLORIDA IS WARRANTED UNDER 28 U.S.C. § 1404(A)

### i. This Action Could Have Been Brought in the Southern District of Florida.

The threshold inquiry under § 1404(a) is whether this action "might have been brought" in the proposed transferee district. *Volkswagen I*, 371 F.3d at 203. The FCRA contains no special venue provision; venue is governed by 28 U.S.C. § 1391. Two independent grounds establish that this action could have been brought in the Southern District of Florida.

First, under § 1391(b)(1), venue is proper where all defendants reside in the same state. The Taverna Collection Inc. is a Florida corporation subject to personal jurisdiction in Florida. If and when the Plaintiff perfects service upon GianMarco Taverna[2] he is an individual domiciled in Broward County, Florida. Both reside within the Southern District of Florida.

Second, venue is independently proper under § 1391(b)(2) because the alleged conduct, the submission of Plaintiff's consumer information to third-party lenders without a permissible purpose, was purportedly effectuated from the dealership's Florida location using Florida-based systems and personnel. For FCRA venue purposes, it is the violative conduct, not where the plaintiff suffers harm, that give rise to the claim. *See Allen v. Equifax Info. Servs. LLC,* No. 4:23-cv-03406, 2024 U.S. Dist. LEXIS 26388, at \*4 (S.D. Tex. Feb. 15, 2024); *see also Heugel v. Trans Union, LLC,* No. 1:22-cv-1152-LY, 2023 U.S. Dist. LEXIS 74702, at \*10 (W.D. Tex. Apr. 10, 2023). The acts giving rise to liability occurred in the Southern District of Florida, independently satisfying § 1391(b)(2).

Because venue would have been proper there under both § 1391(b)(1) and § 1391(b)(2), the Southern District of Florida is a district in which this action could have been brought.

**ii. The Private Interest Factors Weigh in Favor of Transfer.**

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203.

### a. *The Relative Ease of Access to Sources of Proof Favors Transfer.*

---

[2] This analysis is presented without waiver of Defendants' position that GianMarco Taverna has not been properly served and is not currently before this Court.

"The first factor focuses on the location of the relevant documents and physical evidence relative to the transferee and transferor venues." *In re Orion Marine Constr., Inc*., No. 3:20-CV-00309, 2020 U.S. Dist. LEXIS 246702, at *3 (S.D. Tex. Dec. 21, 2020) (citation omitted). Plaintiff's own documentary evidence, myFICO credit reports, revocation email chain, adverse-action notices, and FICO score history (Dkts. 6–8, Exs. 1–7), is in her possession and will be produced in any forum. It does not weigh against transfer.

What is not in this district is the evidence bearing on Defendants' alleged conduct-whichever defendant that may be responsible for the purported harms suffered by the Plaintiff. The physical evidence is in Florida. The dealer management systems, through which any financing submissions would have been processed, are operated in the Southern District of Florida. Taverna Decl. ¶ 6; Hogan Decl. ¶ 6. Any deal-related records, including lender portal access logs, application records, internal communications and to the extent any consumer authorization documents or submission records exist, are maintained at the dealership. *Id*. The Taverna Collection's records are likewise held in the Southern District. Taverna Decl. ¶ 4. Simply put, no physical evidence bearing on the alleged conduct is located in this district.

"Technological advancements neither lighten the weight of this factor nor render it superfluous." *Qualls v. Prewett Enters., Inc.*, 594 F. Supp. 3d 813, 823 (S.D. Tex. 2022) (citation omitted). That files can be sent electronically does not preclude the location of the files weighing in favor of transfer. *Id.*; see also *Sandbox Logistics LLC v. Grit Energy Sols. LLC*, No. 3:16-CV-12, 2016 U.S. Dist. LEXIS 110176, at *3 (S.D. Tex. Aug. 17, 2016).

Because all physical evidence bearing on Defendants' alleged conduct is in Florida, and none is in this district, this factor favors transfer.

### b.  *The Availability of Compulsory Process Favors Transfer.*

"The second private interest factor examines the availability of compulsory process over witnesses." *In re Orion Marine*, 2020 U.S. Dist. LEXIS 246702, at *4. District courts have authority to compel non-party witnesses "to attend a trial, hearing, or deposition" that is conducted "within 100 miles of where the person resides, is employed, or regularly transacts business in person." *In re Bay*, No. 3:25-cv-00213, 2025 U.S. Dist. LEXIS 172148, at *5-6 (S.D. Tex. Sep. 4, 2025)(citations omitted); Fed. R. Civ. P. 45(c)(1)(A).

The Houston courthouse is approximately 1,300 miles from the dealership's North Miami location. Audreyona Washington, Capital One's dealership representative, has personal knowledge of how Plaintiff's transaction originated, what Capital One did with the associated applications, and Capital One's inquiry practices generally. Ms. Washington is based in Fort Lauderdale, Florida, and has indicated she is unwilling to travel to Texas. Taverna Decl. ¶¶ 9–11. Given that Fort Lauderdale falls within 100 miles of where she resides or is employed, she would be subject to compulsory process in the Southern District of Florida, but not in this Court.

The inability to compel her attendance is a real impediment to trying this case in this district. This factor favors transfer. *Fall v. Rahim*, No. 4:24-cv-2464, 2024 U.S. Dist. LEXIS 229956, at *7–8 (S.D. Tex. Dec. 19, 2024) (finding the compulsory process factor favored transfer where the court could not subpoena key witnesses but the transferee court could).

### c. The Cost of Attendance for Willing Witnesses Favors Transfer.

The third private interest factor, often considered the most important in the transfer analysis, evaluates the cost of attendance for willing witnesses. *In re Orion Marine Constr.,* 2020 U.S. Dist. LEXIS 246702, at 11. The Fifth Circuit has emphasized that witness inconvenience increases substantially as travel distance grows because additional distance requires greater travel

time, lodging expenses, and time away from regular employment. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008).

Here, every presently known witness connected to Defendants' side of the transaction resides in South Florida. Matt Hogan, the dealership's corporate representative, lives and works in South Florida and would be required to travel more than 1,300 miles to participate in depositions, hearings, and trial in Houston which would substantially disrupt both the dealership's operations and his own personal commitments. Taverna Decl. ¶¶ 12-14; Hogan Decl. ¶¶8-12.

Likewise, Victor Quintero, the sales agent who interacted with Plaintiff during the transaction at issue, works in Miami-Dade County, resides in the Southern District and would face the same burden. Taverna Decl. ¶15. Matt Hogan, the General Manager of The Taverna Collection, Inc. who would have personal knowledge of that defendant's interactions-if any- with the Plaintiff likewise resides in the Southern District and works in Broward County and Miami-Dade County. Taverna Decl. ¶¶ 16-17.

Although Defendant GianMarco Taverna has not yet been served with process, he likewise resides in Miami-Dade County. Taverna Decl. ¶18. To the extent Plaintiff cures any service defect and establishes a colorable claim against him in his capacity as the fictitious-name operator, Mr. Taverna would also be required to travel more than 1,300 miles to litigate this case in Texas. Mr. Taverna's absence from the Southern District would cause a significant impact on the day-to-day operations on the dealership and his work obligations across the several dealerships he operates. Taverna Decl. ¶¶ 19-22. The burden on these witnesses is particularly significant given that the operative events underlying the dispute occurred in Florida.

Modern technology does not eliminate these burdens. While electronic discovery and remote depositions may reduce some travel during pretrial proceedings, witnesses must still appear

in person for trial. As a result, the cost-of-attendance factor remains significant even in an era of electronic discovery. *See Fall, 2024 U.S. Dist. LEXIS 229956, at \*10* (recognizing that although technology can reduce some travel burdens, the cost-of-attendance factor favored transfer where key witnesses were located more than 1,000 miles from the forum).

By contrast, the Wilkie D. Ferguson Jr. United States Courthouse in Miami is 14.4 miles from the dealership and the federal courthouse in Fort Lauderdale is 14.5 miles. Litigating this case in the Southern District of Florida would therefore allow the relevant witnesses to participate with minimal disruption to their professional obligations.

Here the cost-of-attendance factor strongly favors transfer. *In re TikTok, Inc.,* 85 F.4th 352, 362 (5th Cir. 2023).

### d.  All Other Practical Considerations Are Neutral.

This case is at the earliest possible stage of litigation. No scheduling order has been entered, no Rule 26(f) conference has occurred, and no discovery has begun. As a result, transferring the case will not duplicate judicial effort or cause any delay. There are also no related cases pending in this district that would create a risk of inconsistent rulings or duplicative litigation. Nor has any party made substantial investments in litigating the case in Texas.

Accordingly, this factor is neutral and presents no obstacle to transfer.

### iii.  Public Interest Factors Favor Transfer or Are Neutral.

The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws." *Volkswagen I*, 371 F.3d at 203.

### a.  Court Congestion Supports Transfer.

The administrative difficulties flowing from court congestion likewise support transfer. Courts evaluating this factor consider whether the relative caseloads and disposition times of the competing forums suggest that the case will proceed more efficiently in one district than another. Although docket congestion alone is rarely dispositive, it remains a relevant consideration in the overall transfer analysis. *In re Volkswagen of Am., Inc.,* 545 F.3d at 317.

Here, the relevant statistics demonstrate that the Southern District of Texas maintains a substantially heavier civil docket than the Southern District of Florida. As of September 30, 2025, the Southern District of Texas had 7,303 civil cases pending, compared with 4,164 pending civil cases in the Southern District of Florida, a difference of more than 3,100 cases, meaning the Southern District of Texas maintains a civil docket approximately 75% larger than that of the Southern District of Florida. *Admin. Off. of the U.S. Cts., Judicial Business of the United States Courts* tbl. C-6 (Sept. 30, 2025), https://www.uscourts.gov/sites/default/files/document/jb_c6_0930.2025.pdf (last visited Mar. 12, 2026). Courts in this district have recognized that such disparities in pending caseloads weigh in favor of transfer. See *Smith v. Thor Motor Coach, Inc.*, No. H-24-1856, 2024 U.S. Dist. LEXIS 134021, at *8 (S.D. Tex. July 30, 2024) (finding the court-congestion factor favored transfer where the Southern District of Texas had significantly more pending cases than the transferee district).

The disposition statistics tell a similar story. The median time from filing to disposition of civil cases is 9.6 months in the Southern District of Texas, compared with 7.7 months in the Southern District of Florida, meaning civil cases are resolved approximately two months faster on average in the Southern District of Florida. *Admin. Off. of the U.S. Cts., Judicial Business of the United States Courts* tbl. C-5 (Sept. 30, 2025),

https://www.uscourts.gov/sites/default/files/document/jb_c5_0930.2025.pdf (last visited Mar. 12, 2026).

Taken together, these statistics indicate that judicial resources are more heavily strained in the Southern District of Texas than in the Southern District of Florida. While this factor alone would not justify transfer, it reinforces the conclusion that litigating this dispute in the Southern District of Florida would promote the efficient administration of justice.

### b. The Local Interest Factor Strongly Favors Transfer.

The local interest factor focuses on "the significant connections between a particular venue and the events that gave rise to the suit." *In re TikTok, Inc.*, 85 F.4th 352, 364. The analysis centers on community interest, not the parties' connections to the forum. *Id.* "Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation." *Affinity Labs of Tex. v. Samsung Elecs. Co*., 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013) (*citing Volkswagen I*, 371 F.3d at 206). Simply put, "[m]atters should be litigated in [the district] where they occur." *Mueblas-Curtis v. Am. Airlines, Inc.,* Civil Action No. 3:25-CV-1201-D, 2025 U.S. Dist. LEXIS 191407, at *6 (N.D. Tex. Sep. 29, 2025)(citations omitted).

The Southern District of Florida has a compelling local interest: the alleged conduct occurred entirely in Florida, by a Florida dealership, and the residents of South Florida have a direct interest in whether automobile dealers in their community comply with federal consumer protection law.

By contrast, the Southern District of Texas has no meaningful connection to the events that gave rise to this suit. At best, Plaintiff purports to have experienced the downstream effects of the alleged conduct in Texas, credit denials, score decline, and adverse-action notices, but this Court has held in an FCRA case that a plaintiff's receipt of harm at home does not give rise to the claim

and does not establish a local interest in the forum. *Allen v. Equifax Info. Servs. LLC*, No. 4:23-cv-03406, *2024 U.S. Dist. LEXIS 26388, at 2–3 (S.D. Tex. Feb. 15, 2024) (Eskridge, J.) (adopting *Heugel v. TransUnion, LLC*, No. 1:22-cv-1152-LY, 2023 WL 3098994, at *3–4 (W.D. Tex. Apr. 27, 2023), and rejecting *Smith v. RealPage, Inc.*, No. 4:16-cv-00033, 2018 WL 3105758, at *4 (E.D. Tex. June 25, 2018)). The downstream consequences Plaintiff experienced in Texas do not vest this district with a competing local interest.  This factor strongly favors transfer.

### c.  *Familiarity with Governing Law and Conflict of Laws Are Neutral.*

This case turns on a single federal statute, the FCRA, 15 U.S.C. § 1681 *et seq.* Unquestionably, both courts are equally familiar with federal consumer protection law and there are no conflict-of-laws issues. These factors are neutral.

## B.  IN THE ALTERNATIVE, VENUE IS IMPROPER IN THIS DISTRICT AND THIS ACTION MUST BE TRANSFERRED OR DISMISSED UNDER RULE 12(b)(3) AND 28 U.S.C. § 1406(a).

Federal Rule of Civil Procedure 12(b)(3) authorizes dismissal for improper venue. Where venue is improper, 28 U.S.C. § 1406(a) requires the court to either dismiss the action or, if it is in the interest of justice, transfer it to a district where it could have been brought.

### a.  *Venue Is Not Proper in the Southern District of Texas Under § 1391(b).*

Venue in a federal civil action is proper only in: (1) a district where any defendant resides, if all defendants reside in the same state; (2) a district where a substantial part of the events giving rise to the claim occurred; or (3) if no other district satisfies (1) or (2), any district where any defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(b). None of these grounds are satisfied in the Southern District of Texas.

Here, section 1391(b)(1) is unavailable because no defendant resides in Texas. The Taverna Collection Inc. is a Florida corporation, and "Drive Taverna Collection, LLC" does not exist as a legal entity. Accordingly, no defendant resides in Texas for purposes of § 1391(b)(1).

Because the only legally cognizable defendant resides in Florida, subsection (b)(1) cannot establish venue in this district.

Section 1391(b)(2) is likewise unavailable because a substantial part of the events giving rise to Plaintiff's FCRA claim did not occur in this district. The statutory inquiry focuses on where the events that allegedly constitute the violation occurred, not where a plaintiff later experiences the consequences of those events. In an FCRA case such as this one, the operative conduct is the alleged submission of a consumer's information to lenders without a permissible purpose. The location of that conduct, where the information was transmitted and where the decisions were made, is therefore the location of the events giving rise to the claim.

This Court addressed an analogous question in *Allen*, 2024 U.S. Dist. LEXIS 26388, at *2–3, holding that for FCRA venue purposes it is the actions taken that purportedly violated the FCRA, not the plaintiff's receipt of harm at home, that give rise to the claim. The Court adopted the reasoning of *Heugel*, 2023 WL 3098994, at *3–4, which held that a plaintiff's receipt of harm from alleged credit-report inaccuracies and her own dispute activities in her home district do not constitute events giving rise to the claim. Instead, the relevant events are those associated with the alleged statutory violation itself.

Applied here, the alleged conduct giving rise to Plaintiff's FCRA claim, the purported submission of her consumer information to third-party lenders without a permissible purpose, was executed from the dealership's Florida location using Florida-based systems and personnel. The dealership that interacted with Plaintiff operates in North Miami, Florida, and the relevant systems and records associated with any financing submissions are maintained in South Florida. The personnel involved in the transaction likewise operate from the dealership's Florida location.

By contrast, the only connection to Texas is Plaintiff's residence and the alleged downstream effects she experienced there. Plaintiff alleges that she received credit denials, experienced a decline in her credit score, and received adverse-action notices in Texas. But those events are merely the consequences of the alleged conduct, not the conduct itself. Under *Allen* and *Heugel*, those downstream effects do not give rise to the FCRA claim and therefore do not establish venue under § 1391(b)(2).

Section 1391(b)(3) is also unavailable because § 1391(b)(2) is satisfied in the Southern District of Florida, meaning a proper venue exists and the fallback provision of § 1391(b)(3) cannot be invoked. That subsection applies only when no district satisfies subsections (b)(1) or (b)(2). Here, the Southern District of Florida plainly satisfies both: the defendants reside there, and the alleged conduct giving rise to the claim occurred there.

Because the alleged conduct occurred in Florida, and no defendant resides in Texas, none of the statutory bases for venue under § 1391(b) are satisfied in this district. Venue in the Southern District of Texas is therefore improper.

### b. The Court Should Transfer Rather Than Dismiss.

Where venue is improper, 28 U.S.C. § 1406(a) directs the court to dismiss or, if in the interest of justice, transfer the case to a district where it could have been brought. Transfer rather than dismissal is appropriate here. The Southern District of Florida is a proper venue on two independent grounds, as established *supra*. The case is at the earliest stage; no substantive proceedings have occurred. Plaintiff would not be prejudiced by transfer, she would simply litigate in the district where the operative events occurred. Transfer promotes judicial economy and ensures that this dispute is resolved on the merits in the correct forum.

**C. "DRIVE TAVERNA COLLECTION, LLC D/B/A TAVERNA INFINITI NORTH MIAMI" MUST BE DISMISSED BECAUSE IT DOES NOT EXIST AND HAS NO CAPACITY TO BE SUED.**

Independent of, and without waiver to, the request for transfer, "*Drive Taverna Collection, LLC*" must be dismissed with prejudice regardless of venue. The entity does not exist, it has no capacity to be sued under applicable law and service upon it was void.

### i.    Dismissal under Rule 12(b)(6) is warranted

"Under the Federal Rules of Civil Procedure, a party in a lawsuit must have the capacity to be sued." *Marshall v. Abbott*, No. 4:21-CV-384-SDJ-CAN, 2022 U.S. Dist. LEXIS 38977, at *5 (E.D. Tex. Feb. 4, 2022)(citation omitted). Rule 17(b) governs the determination of capacity. The Rule provides that capacity for individuals is determined by the law of their domicile, capacity for corporations is determined by the law of the state of incorporation, and capacity for all other parties is determined by the law of the state where the court sits. Fed. R. Civ. P. 17(b)(1)–(3). Because "*Drive Taverna Collection, LLC*" does not exist as a registered entity anywhere, it is not incorporated in any state and falls within Rule 17(b)(3)'s residual category. Texas law therefore governs the question of capacity. *Sneed v. Gibbs*, Civil Action No. 4:23-CV-00871, 2024 U.S. Dist. LEXIS 146544, at *9 (E.D. Tex. Aug. 16, 2024)

Plaintiff's Complaint alleges that "*Drive Taverna Collection, LLC*" is a Florida limited liability company operating under the fictitious name "*Taverna INFINITI North Miami.*" (Compl. ¶ 4.) The public record demonstrates that this allegation is incorrect.

Because a civil action cannot proceed against a non-existent entity, dismissal is appropriate under Rule 12(b)(6). Although Rule 12 does not expressly address capacity to be sued, Rule 12(b)(6) motions are properly used where the capacity issue appears on the face of the pleadings. *Doe v. McKesson*, 945 F.3d 818, 824 n.2 (5th Cir. 2019), *rev'd on other grounds*, 592 U.S. 1 (2020); *see also Sneed*, 2024 U.S. Dist. LEXIS 146544, at *8.

The official records of the Florida Division of Corporations establish, as a matter of judicially noticeable public record, that no entity named "*Drive Taverna Collection, LLC*" exists or has ever existed as a registered Florida limited liability company or any other legally recognized business entity. Ex. B. The same records confirm that the fictitious name "Taverna INFINITI North Miami" is registered not to any LLC, but to GianMarco Taverna individually. Ex. A.; Taverna Decl. ¶ 3. Accordingly, the public record does not reveal a misnamed but existing defendant; it confirms that the entity identified in the Complaint simply does not exist.

Under Texas law, the designation "doing business as" or "d/b/a" does not create a separate legal entity. It merely describes a person or corporation conducting business under an assumed name. *Scottsdale Ins. Co. v. Knox Park Constr., In*c., 488 F.3d 680, 688 n.5 (5th Cir. 2007); *Thiesen v. Royal Neighbors of Am*., 6:10-CV-496, 2010 U.S. Dist. LEXIS 161215, 2010 WL 11556549, at *4 (E.D. Tex. Nov. 23, 2010). A fictitious name therefore cannot itself be sued as though it were a distinct juridical person. *Thiesen*, 2010 U.S. Dist. LEXIS 161215, 2010 WL 11556549, at *4 (*quoting Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 634 n.2 (4th Cir. 2002)).

Even if the Court were to accept Plaintiff's characterization that the purported entity is a Florida LLC operating under a Florida fictitious name, the result would be the same. "*Drive Taverna Collection, LLC*" does not exist and under Florida law, a fictitious business name is merely an alias and does not create a separate legal entity with independent existence. *Mastro v. Seminole Tribe of Fla*., 578 F. App'x 801, 802–03 (11th Cir. 2014); *see also* Fla. Stat. § 865.09.

Thus, whether analyzed under Texas law pursuant to Rule 17(b)(3) or under Florida law based on Plaintiff's own characterization of the entity, the same conclusion follows: neither the

fictitious name "*Taverna INFINITI North Miami*" nor the non-existent entity "*Drive Taverna Collection, LLC*" constitutes a legally cognizable defendant capable of being sued.

Because the entity identified in the Complaint has no legal existence, the defect is not a correctable misnomer. There is no company called "Drive Taverna Collection, LLC d/b/a Taverna INFINITI North Miami" that could be properly named through amendment. The purported defendant is therefore a legal nullity that must be dismissed from this action.

### ii.      Dismissal is further warranted under Rule 12(b)(5)

Dismissal is independently warranted under Rule 12(b)(5). Process directed at a non-existent entity is void. *D&T Partners, LLC v. Baymark Partners, LP*, No. 3:21-CV-1171-B, 2022 U.S. Dist. LEXIS 97374, at *5 (N.D. Tex. June 1, 2022). Service on a dealership employee for a non-existent LLC cannot constitute valid service on any cognizable defendant. Moreover, even if the service attempt is construed as directed at the fictitious name's registered owner, GianMarco Taverna was not personally served. (Dkt. 5 at 2.) Rule 4(e) requires personal delivery, service at the individual's dwelling, or delivery to an authorized agent, none of which occurred. Plaintiff is proceeding *pro se*, but pro se litigants are still required to comply with the same procedural rules that govern all parties in litigation. *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) (per curiam) (holding that pro se litigants must comply with the rules governing service of process).

### iii.  Dismissal Does Not Prejudice Plaintiff.

Dismissal of "*Drive Taverna Collection, LLC*" does not deprive Plaintiff of a remedy. The Taverna Collection Inc. was served and has appeared through counsel. GianMarco Taverna, while not yet personally served, is identified by the public record and is subject to proper service as an individual under Rule 4(e). Retaining "*Drive Taverna Collection, LLC*" serves no purpose: it is a legal nullity incapable of holding assets, satisfying a judgment, or participating in litigation.

Dismissing it clarifies the record and allows this case to proceed against legally cognizable defendants.

## CONCLUSION

For these reasons, Defendant The Taverna Collection Inc. respectfully requests that the Court transfer this action to the United States District Court for the Southern District of Florida, Miami Division, pursuant to 28 U.S.C. § 1404(a). In the alternative, Defendant requests that the Court dismiss or transfer this action for improper venue under Rule 12(b)(3) and 28 U.S.C. § 1406(a). Defendant further requests that the Court dismiss all claims against "Drive Taverna Collection, LLC d/b/a Taverna INFINITI North Miami" under Rules 12(b)(6) and 12(b)(5), as that entity does not exist and lacks capacity to be sued.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(D), undersigned counsel certifies that on March 02, 2024, counsel conferred with Plaintiff via email regarding the relief requested in this Omnibus Motion. Plaintiff opposes the requested relief.

Respectfully submitted,

*/s/ Joshua E. Feygin*
JOSHUA FEYGIN, ESQ.
FL Bar No.: 124685
SDTX Fed. No. 3959309
Email:  Josh@JFeyginesq.com
**JOSHUA FEYGIN, PLLC**
4601 Sheridan St #205,
Hollywood, FL 33021
Tel: (954) 228-5674
Fax: (954) 697-0357

## CERTIFICATE OF SERVICE

I hereby certify that Monday, March 16, 2026, a true and correct copy of the foregoing Defendants' Motion for Extension of Time to Respond to Complaint was filed electronically with the Clerk of Court using the CM/ECF system.

I further certify that a true and correct copy was served upon Plaintiff, who is proceeding *pro se*, via United States Mail, First Class Mail, addressed as follows:

Paige Smith
5103 Wildwood Drive
Manvel, TX 77578

*/s/ Joshua E. Feygin*
**JOSHUA FEYGIN, ESQ.**
FL Bar No.: 124685
SDTX Fed. No. 3959309
